UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

J.M., individually and as parent and next friend
to R.M., a child with a disability,

                               Plaintiff,               1:14-CV-0542
                                                    (GTS/DJS)
v.

KINGSTON CITY SCHOOL DISTRICT,

                               Defendant.
_____

APPEARANCES:                                  OF COUNSEL:

CUDDY LAW FIRM, P.C.                   JASON H. STERNE, ESQ.
  Counsel for Plaintiff
5693 South Street Road
Auburn, New York 13021

SHAW, PERELSON, MAY &              MARK C. RUSHFIELD, ESQ.
LAMBERT, LLP
  Counsel for Defendant
21 Van Wagner Road
Poughkeepsie, New York 12603

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this civil rights action filed by J.M. ("Plaintiff") on behalf

of her child, R.M., against the Kingston City School District ("Defendant" or "the District")

pursuant to the Individuals With Disabilities Education Act ("IDEA") and Article 89 of the New

York Education Law, are Defendant's motion for summary judgment (Dkt. No. 13) and

Plaintiff's motion for summary judgment (Dkt. No. 14). For the reasons set forth below,

Defendant's motion is granted, Plaintiff's motion is denied, and her Amended Complaint is

dismissed.

# I.    RELEVANT BACKGROUND

## A.    Plaintiff's Amended Complaint and Defendant's Counterclaims

Generally, Plaintiff's Amended Complaint asserts a claim that Defendant deprived R.M. of a free appropriate public education ("FAPE") for the 2013-2014 school year, in violation of the IDEA and Article 89 of the New York Education Law.  (*See generally* Dkt. No. 4 [Am. Compl.].)  In support of this claim, Plaintiff challenges the decision of a State Review Officer ("SRO"), which reversed the decision of an Independent Hearing Officer ("IHO") presiding over a due process hearing in which Plaintiff challenged Defendant's individual education program ("IEP") promulgated for R.M.  (*Id.*)  Specifically, Plaintiff alleges that the SRO incorrectly concluded that the District offered a FAPE without addressing the IHO's findings that Chapel Haven–a private school in Connecticut that Plaintiff wanted R.M. to attend–was an appropriate placement and that the equities weighed in favor of the parent.  (*Id.* at ¶¶ 11-19.)  On the basis of these allegations, Plaintiff seeks, *inter alia*, the following relief:  (1) a declaratory judgment declaring the SRO's decision "invalid"; (2) an order directing Defendant to provide the relief originally awarded by the IHO (funding R.M.'s placement at Chapel Haven for the calendar year 2014); and (3) an award of costs, expenses, and attorneys' fees incurred in connection with the administrative proceeding and the present action pursuant to 20 U.S.C. § 1415.  (*Id.* at 5.)

Generally, Defendant's Answer asserts the following four counterclaims against Plaintiff, each asserted in the event that the Court does not uphold the SRO's determination: (1) a counterclaim requesting that the Court dismiss Plaintiff's Amended Complaint because she has not met her burden of establishing the following things: (a) that Chapel Haven provided appropriate individualized instruction to meet R.M.'s special education needs; and (b) that

Chapel Haven was not the least restrictive environment for the placement of R.M. for either the 2013-2014 or 2014-2015 school years; (2) a counterclaim requesting that the Court dismiss Plaintiff's Amended Complaint because the equities do not weigh in favor of granting prospective residential private school tuition payments; (3) a counterclaim requesting that the Court dismiss Plaintiff's Amended Complaint because she has not met her burden of establishing that there was no appropriate State-approved program available to R.M. for the 2013-2014 school year and that Plaintiff was financially incapable of fronting the tuition costs of placement at Chapel Haven; and (4) a counterclaim requesting that the Court find that the IHO exceeded his authority by granting prospective relief as to the 2014-2015 school year, because an IEP had not yet been developed for that school year. (Dkt. No. 6 at 2-4 [Answer].)

## B. Relevant Factual Background

After carefully considering the evidence presented by the parties on their respective motions as well as the administrative record of the underlying proceeding, the Court finds that the following facts have been established by a preponderance of the evidence.[1] (*Compare* Dkt. No. 13, Attach. 1 [Def.'s Rule 7.1 Statement] *with* Dkt. No. 18, Attach. 1 [Plf.'s Rule 7.1 Response]; *compare* Dkt. No. 14, Attach. 2 [Plf.'s Rule 7.1 Statement] *with* Dkt. No. 16 [Def.'s Rule 7.1 Response].)[2]

---

[1]     A certified copy of the administrative record developed before the SRO was filed by the New York State Education Department ("NYSED"). The parties cite to the administrative record in support of their respective motions, but have not attached any of those documents as exhibits (presumably for reasons of economy and confidentiality). To the extent relevant facts are not presented and admitted in the parties' Rule 7.1 Statements and Responses, the Court will cite to those records by reference to the exhibit designation given to those documents at the due process hearing and/or the date and title of the document.

[2]     The Court notes that, included within Defendant's Rule 7.1 Response is a purported "Counter-Statement of Material Facts Not in Dispute." (Dkt. No. 16 at 6-11.) The only Local Rule on the subject permits a statement of "additional material facts that the non-movant contends are in dispute." N.D.N.Y. 7.1(a)(3). To the extent Defendant has attempted that statement to be one of *undisputed* material facts in response to Plaintiff's motion for summary judgment, the Court rejects that attempt.

### 1.     R.M.'s Educational Background

R.M. was born in March 1994[3] and, at the time this action was commenced, was

classified by the District's Committee on Special Education ("CSE") as a student with autism.

She attended District schools until her parents removed her and placed her in a day placement at

the Ridge School in Hyde Park, New York, where she completed seventh through tenth grade

(through the 2010-2011 school year).  According to Plaintiff, R.M. was removed from public

school in or around seventh grade because she was suffering "increased anxiety going to school"

due to "severe bullying issues[.]"  (Transcript of Impartial Hearing ["Hrg. Tr."] at 257.)  Plaintiff

also testified that R.M. "was sexually molested somewhere between fifth and sixth grade,"

apparently by another female student.  (*Id.* at 257-58; Def.'s "Exhibit 4" at 3 [Psychological

Evaluation of R.M., final date of evaluation October 23, 2010].)   In June 2011, R.M.

successfully completed the New York State Global History and Earth Science Regents exams

while at the Ridge School.

For the 2011-2012 school year, the CSE recommended placing R.M. in the Ulster County

Board of Cooperative Education Services ("BOCES") program "with support for student [*sic*] on

the autism spectrum."  (Plf.'s "Exhibit N" [2011-2012 IEP].)  In October 2011, Plaintiff filed a

due process complaint, demanded an impartial hearing, and requested that the District pay the

---

[3]     The District notes that Plaintiff filed this action as R.M.'s "parent and next friend," despite the fact that R.M. was nineteen years old at the time of filing and the relief sought appears to have been exclusively for the benefit of R.M., rather than Plaintiff.  (Dkt. No. 13, Attach. 4 at 1 n.1 [Def.'s Memo. of Law].)  The District does not appear to have raised this issue at any point prior to its motion for summary judgment and does not argue that this fact provides an independent basis for denying the relief sought here.  In any event, the Court notes that, at the time the Amended Complaint was filed, R.M. was still a high school student with a disabling condition eligible for special education services under the IDEA.  *See generally Heldman ex rel. T.H. v. Sobol*, 962 F.2d 148, 158 (2d Cir. 1992) (finding that plaintiff, "as the father of a [nineteen year-old] child with a disabling condition" who was still in high school, had standing to challenge procedures for selecting hearing officers in the IDEA context).

cost of R.M.'s attendance at Chapel Haven, rather than BOCES, due to R.M.'s "extreme phobia of public school." (Plf.'s "Exhibit S"). Chapel Haven is a two-year, non-public residential life skills program in Connecticut for adults between the ages of eighteen and twenty-seven. Chapel Haven does not offer academic courses and is not a state-approved school with which the District could contract to provide services to students with disabilities. Ultimately, R.M. received home instruction at District expense for the 2011-2012 school year and attended, in person, two classes at Dutchess Community College, earning a B+ and B.

During the 2012-2013 school year, pursuant to a settlement agreement between Plaintiff and the District, R.M. attended Chapel Haven (at the District expense, for that year only). The hearing record reflects that the District made significant effort to find an appropriate placement for R.M. for 2012, but that she was ultimately rejected from nineteen in-state proposed placements. (Plf.'s "Exhibit II" at 2-3 [Letter from Kingston City Schools' Department of Special Education to NYSED, December 23, 2011].) BOCES was among the placements considered, but the District concluded that BOCES was inappropriate at that time because R.M. was "'too anxious" as a result of her reported history of bullying and therefore could not attend a program with "emotionally disturbed" students. (*Id.*) While at Chapel Haven, R.M. attended a class at a local community college, independently traveling to and from the class by public bus. Her social deficits also improved; she became more outgoing, experienced less anxiety, built friendships, and went out into the community by herself.

### 2.     CSE Meeting For the 2013-2014 School Year

On or about June 21, 2013,[4] the CSE convened to develop R.M.'s IEP for the 2013-2014

school year.  Beth Lewis-Jackson ("Lewis-Jackson"), who was the District's Director of Special

Education and had known R.M. since 2007, chaired the meeting and took part in developing the

IEP.  The following individuals were also present: Plaintiff, R.M., a student advocate (Jodi

Liston), a family friend (Linda Kondor), two representatives from Chapel Haven (telephonically)

(Jessica Gale and Kathryn Veilleux), the social worker from the Ulster County BOCES Autism

Spectrum Program for Independent Education ("ASPIE") (Bruce Mardiney), and, from the

District, a school psychologist, special education teacher, and guidance counselor.

At the beginning of the meeting, Plaintiff stated that R.M. was "doing very well at Chapel

Haven," becoming "more confident" and making friends.  (Plf.'s "Exhibit LL" at 3.)  Gale, R.M.'s

advisor and special education teacher at Chapel Hill, concurred, and noted that R.M. was

"working extremely hard" and had "been open to trying new things." (*Id.* at 4.)  R.M. audited a

college course the previous semester and was scheduled to interview for an internship

opportunity at a hospital close to Chapel Haven the following fall. (*Id.*)  Kondor stated that she

was "very impressed with how quickly [R.M.] learned to navigate the public transportation

system in New Haven." (*Id.* at 17.)

Jay Dorin, a District guidance counselor, raised the concern that R.M. needed to

complete all of her Regents exams or "RCTs" to make her eligible to graduate. (*Id.* at 4-5.)

Dorin and Plaintiff believed that R.M. had taken and passed Regents exams in Global Studies

---

[4]     The CSE's 2013-2014 IEP reflects a meeting date of June 28, 2013.  (Def.'s "Exhibit 4" at 1 [2013-2014 IEP].)  However, it appears that the meeting was actually held on June 21, 2013.  (Plf.'s "Exhibit KK" [letter advising Plaintiff of CSE meeting scheduled for June 21, 2013]; Plf.'s "Exhibit LL" at 1 [Transcript of IEP Meeting dated June 21, 2013].)

and Earth Science with grades of 92 and 91, respectively. (*Id.* at 4-6, 20.) Plaintiff stated that R.M. was receiving assistance with English from a special education teacher and planned to take the English Regents in January 2014 and the Math Regents in June 2014 (*Id.* at 8-9.) Dorin proposed that Plaintiff meet with him the following week to ensure that he had received all of R.M.'s transcripts and to calculate R.M.'s total earned credits, and Plaintiff agreed. (*Id.* at 9-13.) Plaintiff was hopeful that R.M. would be prepared to graduate in June 2014. (*Id.* at 10.)

At the request of Lewis-Jackson, Gale explained the internship for which R.M. had applied. (*Id.* at 14-15.) The program, called Project Search, allowed students to work in different settings within Yale-New Haven Hospital with the guidance of employees for a full week work schedule, and also included a classroom component. (*Id.*) When asked what she wanted to do after graduation, R.M. did not answer, but Plaintiff stated that R.M. was not sure and was considering several options, including an "ophthalmology college" in New York City. (*Id.* at 16.) According to Plaintiff, R.M. wanted to live in New Haven and take the train as necessary. (*Id.*)

After discussing R.M.'s progress in independently navigating the public transportation system, Lewis-Jackson stated that, for the 2013-2014 school year, the CSE recommended placing R.M. in the BOCES ASPIE program with related services. Lewis-Jackson noted that "Chapel Haven is not a state approved school," that BOCES would "welcome [R.M.] any time," and that Mardiney was present to answer any questions about the ASPIE program. (*Id.* at 18.)[5] The student advocate (Liston) stated that the ASPIE program "remains not appropriate for the

---

[5] Although not explicitly explained at the CSE meeting, the parties do not dispute that the recommended program is an extended year (twelve-month) program with 8:1+1 classes (eight students with one teacher and one paraprofessional) and related services.

same reasons it was not appropriate last year." (*Id.* at 19.)  Plaintiff stated that R.M.'s placement at BOCES was "not gonna happen." (*Id.* at 19.)  Plaintiff added that "we'll have to take it from there" and explained that R.M. "couldn't even get [on] the bus to go on the property without . . . having a nervous breakdown." (*Id.* at 19-20.)

Lewis-Jackson stated that Chapel Haven sent the District "goals" for R.M. to "work on." (*Id.* at 20.)  After further discussion between Plaintiff and Dorin about scheduling a time to meet to confirm the number of credits R.M. had earned at the Ridge School and in her community college courses, the CSE meeting concluded. (*Id.* at  at 20-24.)  Plaintiff did not ask any questions of the BOCES social worker (or anyone else present) regarding the ASPIE program and did not request to visit the program.  Ultimately, R.M. did not attend either Chapel Haven or the ASPIE program for the 2013-2014 school year.  The IHO ordered on consent that the District provide R.M. with tutoring services while the IDEA proceedings were pending so that she could prepare for Regents examinations, but R.M. declined to participate.

### 3. 2013-2014 IEP and Plaintiff's Rejection of the Recommended Placement

The CSE's written 2013-2014 IEP stated that the CSE recommended the BOCES ASPIE program in an 8:1+1 classroom "with speech and counseling" for R.M.'s 2013-2014 school year. (Def.'s "Exhibit 4" at 1.)  The IEP prescribed the following programs and services: small group counseling (once per week); small group speech and language therapy (twice per week); individual counseling (once per week); parent counseling and training (once per month); and individual transition support services (twice per year). (*Id.* at 1, 10.)  The IEP also called for the implementation of an extended school year, assistive technology, and testing accommodations. (*Id.* at 1, 10-11.)  The CSE also adopted all, or almost all, of Chapel Haven's proposed goals as

part of the IEP, including life skills, social skills, vocational, writing skills, speech and language skills, and transitional goals. (*See generally* Def.'s "Exhibit 5.")

The IEP also delineated the evaluations and reports reflecting R.M.'s "current performance and academic, developmental, and functional needs." (*Id.*) Those items included the following: (1) R.M.'s one-year evaluation from Chapel Haven; (2) speech/language testing performed by Hyde Park Central School District (the location of the Ridge School) in June 2011; (3) a psychological evaluation from May 2011; (4) a neuropsychological evaluation from October 2010; and (4) numerous tests completed over the preceding years, including, but not limited to, (a) the Bruininks Ostertetsky Test (June 2011), (b) Test of Pragmatic Language (June 2011), (c) the Wechsler Adult Intelligence Scale-IV (May 2011), (d) Behavior Rating Inventory of Executive Function (October 2010), (e) Cognitive Assessment System (October 2010), (f) Gray Oral Reading Test–4th Edition (October 2010), and (f) the Wechsler Individual Achievement Test-II (October 2010). (*Id.* at 2.) The IEP also noted that, in June 2011, R.M. passed Regents examinations in Global History and Geography and Earth Science. (*Id.* at 3.)

In a letter dated June 24, 2013, Plaintiff rejected the CSE's recommended placement in the ASPIE program for four reasons: (1) the Port Ewen BOCES building in which the program is held is "an overly restrictive environment not condu[c]ive to [R.M.'s] learning needs" and class are "in constant 'lock down'" throughout the day; (2) R.M. was diagnosed with cleisiophobia (fear of being locked in a room) in August 2008, and she had "a severe anxiety attack which required emergency psychiatric intervention" when she visited the ASPIE program in July 2008; (3) R.M. experienced "severe panic attacks" on the school bus when she attended the Ridge School because the bus stopped at BOCES to drop off students; and (4) in its letter dated

December 23, 2011, to the NYSED, the District itself asserted that the BOCES program was not appropriate for R.M.  (Plf.'s "Exhibit TT.")

The parties do not dispute that R.M., now twenty-one years old, has graduated with a New York State Regents diploma.  (Dkt. No. 21 [Affidavit of Kirk Reinhardt, Principal of Kingston High School].)  Her graduation was effective August 21, 2014.  (*Id.*, ¶ 5.)

### C.    Relevant Procedural History

#### 1.    R.M.'s Demand for a Due Process Hearing

In a letter dated July 22, 2013, citing 20 U.S.C. § 1415, Part 200.5 of the Regulations of the Commissioner of Education of New York State, and Section 504 of the Rehabilitation Act, Plaintiff's counsel demanded a due process hearing and asserted that R.M. was denied a FAPE because the District failed to do five things: (1) offer R.M. a placement that would "adequately address[] her academic, physical, social and emotional needs" and, instead, recommended the BOCES ASPIE program, even though "a current packet had not been sent to" BOCES and "an intake" had not been conducted; (2) "discuss or develop an appropriate program for [R.M.] prior to recommending placement at" BOCES; (3) consider whether R.M could be educated and provided with supports and services in a less restrictive environment "prior to recommending a segregated out-of-district placement"; (4) evaluate R.M. "in all areas of suspected disability and need"; and (5) "discuss or develop" a plan by which R.M. would transition back to a public school setting, despite the District's knowledge that she was diagnosed with "a specific phobia regarding attending public school as the result of her experiences of being both bullied and sexually abused by peers and her fear of repeating these experiences."  (Plf.'s "Exhibit OO.")

In a letter dated August 2, 2013, the District responded to each of the five bases upon which Plaintiff argued that R.M. was denied a FAPE. (Plf.'s Hearing "Exhibit PP.") First, the District argued that R.M.'s 2013-2014 IEP "contain[ed] academic, social/emotional, language and daily living skills goals" as part of a properly recommended program that also included "counseling, speech/language therapy, parent counseling and training and transition support services." (*Id.*) Second, the District argued that the CSE reviewed R.M.'s then-current "functioning levels and goals," including input from Chapel Haven staff. (*Id.*) Third, the District argued that the CSE's recommended BOCES placement was located within R.M.'s home school district, constituted the least restrictive environment appropriate for R.M., and was less restrictive than R.M.'s parents' "unilateral residential placement" at Chapel Haven. (*Id.*) Fourth, the District argued that R.M. was not due for reevaluation until the Fall of 2013, that Plaintiff did not identify any "specific area in which" R.M. was not evaluated, and that Plaintiff did not raise or discuss the issue of the scope of R.M.'s evaluation prior to the hearing request. (*Id.*) Fifth, with regard to R.M.'s transition back to a public school setting, the District argued that the recommended program was "a small supportive environment which included both counseling and parent counseling and training, as well as goals to address the management of stressful situations." (*Id.*) Additionally, the District argued that Chapel Haven was not an appropriate placement because it did "not offer specialized instruction to meet [R.M.'s] individual special education needs in the least restrictive environment." (*Id.*)

### 2. Due Process Hearing

On September 5, 2013, an impartial hearing convened. It concluded on November 13, 2013, after two days of testimony.

At the hearing, Lewis-Jackson testified that she first became familiar with R.M. in 2007 and took part in developing R.M.'s 2013-2014 IEP.  (Hrg. Tr. at 60-61.)  At Plaintiff's request, Lewis-Jackson sought "interim emergency placement approval" for Chapel Haven from the NYSED for part of the 2011-2012 school year, but that request was denied.  (*Id.* at 64-67.)  While developing the 2013-2014 IEP, Lewis-Jackson and the CSE "learned [Chapel Haven] w[as] unable to provide . . . the course work that [R.M. need[ed] to graduate."  (*Id.* at 67, 113.)  During her time at Chapel Haven, R.M. had not earned any high school credits necessary for graduation, and Chapel Haven's program does not issue diplomas.  (*Id.* at 68.)

Lewis-Jackson observed the ASPIE program "several times," including that year, and stated that approximately seven students attended at that time.  (*Id.* at 74-75.)  The program was a Regents-based curriculum, consisted of "small classes with eight students," and focused on academic material, social skills, vocational opportunities, activities of daily living, and social communication.  (*Id.* at 75, 83.)  The ASPIE program "has evolved to a level where they are working to meet the [D]istrict's needs as well as the student's needs."  (*Id.*)  The program also provided opportunities for students "to interact with typical peers during [a] vocational component[.]"  (*Id.* at 83-84.)

Lewis-Jackson conferred with Mardiney and the Director of Special Education at BOCES (Marlene Anderson-Butler), and each concluded that the ASPIE program could meet R.M.'s goals.  (*Id.* at 77-78.)  R.M. was formally accepted into the BOCES ASPIE program.  (*Id.* at 78.)  Lewis-Jackson explained that the ASPIE program does not have students with behavioral problems, and such students are instructed in a different wing of the BOCES building.  (*Id.* at 79-80.)  Students at BOCES are *not* locked inside their assigned room or in the building.  (*Id.* at 81-

82.)  R.M.'s IEP called for beginning R.M.'s school year in "the summer months," when it is "a little quieter" so that students can transition gradually prior to the presentation of "academic material" beginning in September.  (*Id.* at 82.)

After Plaintiff requested an impartial hearing, the District proposed resolving the matter by "mov[ing] up [R.M.'s] re-evaluation" by the CSE and reviewing the results of the new evaluation with respect to recommending a placement.  (*Id.* at 84.)  Plaintiff declined.  (*Id.*)  Nonetheless, Lewis-Jackson believed that R.M.'s needs and goals (as described in Chapel Haven's reports on her most recent progress) could be met in the "evolved" BOCES ASPIE program.  (*Id.* at 84-85.)  Lewis-Jackson noted in particular that R.M. had demonstrated progress, including the independent use of public transportation.  (*Id.* at 85.)  While R.M.'s history of fears of entering a public school building concerned Lewis-Jackson, she believed that R.M.'s successful completion of courses at community colleges indicated that, "with the right support," R.M. would also succeed in the ASPIE program.  (*Id.*)  No decision to recommend the ASPIE program for R.M.'s 2013-2014 school year was made until the CSE meeting was held.  (*Id.* at 105.)

Jessica Gale, supervisor of Chapel Haven's Asperger's Syndrome Adult Transition ("ASAT") Program, testified that the ASAT Program is a residential life skills program focused on four domains: "vocational and college," "self-determination," "independent living," and "social communication," which is "the umbrella program."  (*Id.* at 174-75.)  She explained that, by the time of her six-month evaluation during the 2012-2013 school year, R.M. was "initiating more social interactions," participating more in classes, and becoming more independent compared to when she began the program.  (*Id.* at 181-84.)  By the end of the year, R.M. made

friendships and demonstrated greater comfort "speaking about difficult situations[.]"  (*Id.* at 203.)  Chapel Haven developed a plan for R.M.'s 2013-2014 school year which included "expanding on her social communication goals" and participating in an internship at the Yale-New Haven Hospital.  (*Id.* at 205, 207.)

Gale testified that Chapel Haven does not "do academic testing" and students do not receive letter grades in the classes they take.  (*Id.* at 215.)  However, Chapel Haven employs certified special education teachers, and R.M. was working with one during the 2012-2013 school year to help her prepare for the English Regents exam.  (*Id.* at 240.)

Plaintiff testified that R.M. stopped attending public school around the seventh grade due to "increased anxiety" that resulted from "bullying issues," as well as the fact that R.M. was "sexually molested" by another female student in either fifth or sixth grade.  (*Id.* at 257.)  She characterized R.M.'s primary deficit as "[s]ocial."  (*Id.* at 260.)  Plaintiff recalled that, at the June 2013 CSE meeting, there was no discussion of whether R.M. required a residential setting or whether she was still experiencing trauma, and she was not given the opportunity to observe the BOCES ASPIE program.  (*Id.* at 259.)  There was also no discussion regarding a transition plan for returning R.M. to the school district, or whether she required any form of specialized instruction.  (*Id.* at 260, 268.)  Plaintiff observed that, since the start of the 2013-2014 school year (during which R.M. was at home), R.M. was "sleeping in a lot later," exhibiting "selective mutism," and becoming more withdrawn.  (*Id.* at 273.)  Although the IHO had issued a consent order directing the District to provide R.M. home instruction as the case proceeded, those services were not being provided due to Plaintiff's medical issues, and R.M. was unwilling to attend services at the school library.  (*Id.* at 281-82.)

Plaintiff testified that R.M. took two courses at Dutchess Community College during the 2011-2012 school year and that she did not require modifications for the courses. (*Id.* at 275-76.) Plaintiff had no behavioral or disciplinary issues at either the Ridge School or Dutchess Community College. (*Id.* at 275-76.) Plaintiff visited the BOCES ASPIE program in prior years, but not in the 2013-2014 school year. (*Id.* at 277.) No one denied Plaintiff the opportunity to visit the ASPIE program during the 2013-2014 school year. (*Id.*)

### 3. Decision of the IHO

Following the hearing, the IHO issued a 26-page written decision dated December 23, 2013, in which he concluded as follows.

First, the IHO concluded that the District failed to offer R.M. a FAPE for eight reasons: (1) contrary to the CSE's position, there was "insufficient evidence in the record" to support the proposition that the ASPIE program had changed since the time it was deemed inappropriate to meet R.M.'s needs in the 2011-2012 school year (particularly because no one from BOCES testified at the hearing and there was "no discussion of the BOCES program during the [CSE] meeting"); (2) there was "no discussion" regarding whether the goals set forth in the IEP could be implemented at the BOCES placement; (3) the District did not "provide the parents with [p]rior [w]ritten [n]otice with respect to [R.M.'s] change in placement for the 2013-2014 school year"; (4) there was no discussion at the CSE meeting regarding whether R.M. still required a "residential placement" or, on the other hand, whether she was prepared to enter a day program; (5) there was no discussion at the CSE meeting as to whether other students in the ASPIE program "had similar needs to" R.M.; (6) there was no discussion at the CSE meeting as to whether R.M. "still suffered from" the "phobias" that she had developed when she previously

attended public schools; (7) there was no record support for the CSE's conclusion that R.M.'s ability to travel to, and attend, community college courses suggested that she may be successful in the BOCES program, and, in any event, that fact alone did not "support a finding that the BOCES program was appropriate" for R.M; and (8) there was "no evidence in the record" to support the conclusion that the ASPIE program, which was twelve months long and began in the summer, would provide "a 'quieter' time" at which R.M. could begin the school year or that it would, in general, provide a "sufficient amount of support to transition" R.M. back to a public school setting. (IHO Findings of Fact and Decision, December 23, 2013, at 17-18.)

Additionally, the IHO concluded that Chapel Haven would serve as an appropriate placement for R.M.'s 2014 school year for several reasons. (*See id.* at 21-23.) First, R.M. "handled the demands of" Chapel Haven's program "very successfully" during the 2012-2013 school year and also completed a community safety assessment, permitting her to "navigate the community on her own." (*Id.* at 21.) Second, R.M.'s year-end progress report stated that she had "achieved 'further skill enhancement in many areas of her life,'" including working as an administrative assistant at Chapel Haven, improving her communication skills, and making progress on her goals and objectives, including "pulling away from her iPad and focusing more on her instructors" and "understanding non-verbal communication." (*Id.*, quoting Plf.'s "Exhibit SS.") Third, Plaintiff testified at the hearing that R.M. "showed significant social/emotional growth during" the school year at Chapel Haven, and had "regressed" since the time that she stopped attending the program. (*Id.*) Fourth, despite the District's concern about R.M. acquiring enough credits to graduate while at Chapel Haven, the administrative record demonstrated that the District failed to provide Chapel Haven with R.M.'s transcript, did not advise Chapel Haven

that it was "expected to prepare [R.M.] for the English and math regent[s] exams during the 2012-2013 school year," and raised no objection to "the structure of Chapel Haven's program." (*Id.* at 22.) In any event, the IHO explained, "the record shows" that Chapel Haven's special education teachers would help R.M. prepare for her Regents exams during the 2013-2014 school year. (*Id.*) Fifth, R.M. would also have the opportunity to intern at Yale-New Haven hospital, where she would gain "work experience and additional social skills training." (*Id.*) Sixth, the District agreed during a previous school year that Chapel Haven was a "good fit" for R.M. (*Id.*)

Next, the IHO concluded that the equities supported awarding R.M. placement at Chpael Haven at District expense for four reasons: (1) the record demonstrated that the District recommended the ASPIE program "without any discussion from the CSE Team"; (2) during the prior school year, R.M.'s parents worked collaboratively with the District in contacting over twenty prospective placements in New York in an effort to find an appropriate placement; (3) there was no evidence that Plaintiff was asked by the CSE "to consider anything other than" the ASPIE program; and (4) Plaintiff was familiar with the ASPIE program because it was "the same program" that was recommended for the 2011-2012 school year and which Plaintiff visited during the 2012-2013 school year. (*Id.* at 24.)

Finally, the IHO rejected the District's argument that Plaintiff failed to meet her burden to establish that she lacked the financial resources to "front" the cost placing R.M. at Chapel Haven for the 2013-2014 school year. (*Id.* at 24.) The IHO concluded that, although the SRO "has assigned" such a burden in "prospective funding cases," no case within the Second Circuit has imposed such a burden, and, moreover, the remedy ordered was "a directive to the District to place [R.M.] in the proposed setting" and not merely an order for "prospective financial responsibility." (*Id.* at 25.)

###   4.      Decision of the SRO

The District appealed the IHO's decision and, in a sixteen-page written decision dated February 21, 2014, the SRO sustained the District's appeal and determined as follows.

Preliminarily, with regard to the procedural issues raised by Plaintiff (and upon which the IHO's determination, in part, was based), the SRO observed that, although the participants at the June 2013 CSE meeting "did not engage in a detailed discussion of [R.M.'s] needs, annual goals, or the appropriateness of the BOCES placement," the IDEA neither defines the "participation" to which a student's parents are entitled with respect to deciding upon a student's educational placement, nor "prescribe[s] a particular agenda of mandatory discussion topics or the manner in which a CSE must effectuate such participation."  (SRO Decision at 11-12.)  The SRO explained that, although the discussion at the CSE meeting (which included R.M's progress at Chapel Haven during the 2012-2013 school year, the expectation that R.M. would pursue a college program after graduation, and "progress . . . made toward obtaining a regular high school diploma") may have "fallen short of" Plaintiff's "ideal," Plaintiff "specifically declined to ask questions or identify concerns to" the BOCES representative (Mardiney) present at the meeting. (*Id.* at 11-12.)  The SRO further noted that "the failure to explore further discussion about the BOCES program cannot rest upon a single member of the CSE" and that the record did not support a finding that the CSE "was required to further discuss other particular topics[.]"  (*Id.* at 12.)  Based upon those considerations, as well as the information that the CSE considered in developing R.M.'s IEP, the SRO concluded that, "even if there was a procedural violation, it cannot be said that it 'impeded the student's right to a [FAPE], significantly impeded the parent's opportunity to participate in the decision-making process . . . or caused a deprivation of educational benefits[.]"  (*Id.*, quoting 20 U.S.C. § 1415[f][3][E][ii].)

With regard to the District's IEP for R.M.'s 2013-2014 school year, the SRO concluded that the District offered R.M. a FAPE, and that its recommended placement in the BOCES ASPIE program was "appropriate," for the following seven reasons: (1) R.M. made "significant progress" in the previous school years, including taking college courses, and "appeared to have conquered some of the social/emotional concerns she had previously experienced"; (2) R.M.'s more recent "evaluative information" made "little mention" of any anxiety of phobia and, in light of the record and the discussion at the CSE meeting, the CSE's conclusion that R.M. could succeed in a public school setting was "not unreasonable"; (3) the hearing record established that the ASPIE program focused on course work necessary for a high school diploma, provided "vocational opportunities and instruction in activities of daily living, social communication, and travel," included social worker support, and provided opportunities for students to improve their social skills; (4) the District representative (Lewis-Jackson) testified that, prior to the June 2013 CSE meeting, she discussed R.M. and the ASPIE program with the director of special education of the Ulster County BOCES (Marlene Anderson-Butler), who opined that the students in the program were "focused on the same goals" as R.M., including obtaining Regents diplomas; (5) according to Lewis-Jackson, students in the ASPIE program are also provided opportunities to interact with regular education peers during a vocational component of the program; (6) according to Lewis-Jackson, the CSE was hopeful that R.M. would succeed in the ASPIE program in light of her demonstrated ability to independently complete community college courses; and (7) the ASPIE program was appropriate in view of R.M.'s "overall average cognitive and academic abilities, as well as her need for a special class environment focused on social skills development[.]" (*Id.* at 12-16.)

In light of his determination that the District met its burden to establish that it offered R.M. a FAPE for the 2013-2014 school year, the SRO found that it was "unnecessary to address" whether Chapel Haven was an appropriate placement, whether equitable considerations weighed in favor of granting the relief sought by Plaintiff, and whether the IHO's award of prospective relief was appropriate. (*Id.* at 16.)

### D. Briefing on Parties' Motions for Summary Judgment

#### 1. Parties' Arguments on Defendant's Motion

##### a. Defendant's Memorandum of Law-in-Chief

Generally, in its motion for summary judgment, Defendant asserts the following ten arguments: (1) R.M.'s graduation renders her claims (and/or those of Plaintiff) moot, and deprives the Court of subject-matter jurisdiction, because she is no longer entitled to a FAPE (Dkt. No. 13, Attach. 4 at 12-13 [Def.'s Memo. of Law]); (2) the Court lacks subject-matter jurisdiction to grant post-graduation "compensatory education" (i.e., an award of one year of District-funded attendance at Chapel Haven) because Plaintiff did not request such relief from the IHO by her demand for a due process hearing, did not present any argument for such relief before the IHO or SRO, and did not seek such relief in her Amended Complaint (*id.* at 13); (3) even if Plaintiff had exhausted her administrative remedies, she has neither pleaded nor established a "gross violation" of the IDEA, and she is therefore not entitled to an award of compensatory education (*id.* at 14); (4) where the determinations of the SRO and IHO differ, deference is owed to the SRO's determination (*id.* at 15); (5) the District and SRO reasonably concluded that R.M.'s "demonstrated development" indicated that she could succeed in a public school setting (*id.* at 16); (6) any assertions by Plaintiff that she was not provided a "classroom

profile" of the students in the ASPIE program or that she was not given an opportunity to visit the classroom R.M. would attend are "barred from consideration" by the Court (and were also barred from consideration by the SRO) because they were not raised in Plaintiff's demand for a due process hearing (*id.* at 17-18); (7) even if the Court concludes that the District's 2013-2014 IEP did not provide R.M. with a FAPE, Plaintiff has not established that Chapel Haven "provided appropriate individualized instruction" to meet R.M.'s special education needs (inasmuch as Chapel Haven provides no educational instruction) and that it was the least restrictive environment for R.M. ) (*id.* at 18-22); (8) even if the Court concludes that the District's 2013-2014 IEP did not provide R.M. with a FAPE, equitable considerations do not support granting R.M. prospective enrollment at Chapel Haven at District expense because (a) Plaintiff "refused to engage" the BOCES representative or ask any questions regarding the proposed program at the CSE meeting, (b) Plaintiff rejected Lewis-Jackson's offer to have R.M. reevaluated and to reconvene the CSE meeting thereafter, and (c) Plaintiff rejected the District's offer to provide home instruction to R.M. during the pendency of the administrative proceedings (*id.* at 23-24); (9) Plaintiff is not entitled to prospective relief because she neither enrolled R.M. at Chapel Haven for the 2013-2014 school year nor argued (or demonstrated) that she was financially unable to pay R.M.'s tuition so that she could attend while the proceedings were pending (*id.* at 24); and (10) Plaintiff's request that the relief granted by IMO (placement at Chapel Haven for a calendar year) be reinstated is "barred from consideration" by the Court because Plaintiff did not seek such relief beyond June 2014 in her due process hearing request (*id.* at 25).

### b.       Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Defendant's motion, Plaintiff asserts the following seven arguments: (1) the claims advanced by Plaintiff and/or R.M. are not moot because courts may award "compensatory services" following a student's graduation (Dkt. No. 18 at 1 [Plf.'s Opp'n Memo. of Law]); (2) placement in a "non-approved private" school is permissible under the IDEA (*id.*); (3) an award of prospective relief is not dependent upon the financial situation of the student's family (*id.* at 1-2); (4) denying R.M. an award of compensatory education because Plaintiff failed to plead a "gross violation" of the IDEA prior to R.M.'s graduation would deprive R.M. of a proper remedy "merely due to the passage of time" (*id.* at 3); (5) the Court should exercise its "discretion to order appropriate relief" by "modify[ing] the time frame for the relief" awarded by the IHO (who directed placement, at District expense, of R.M. at Chapel Haven for the 2014 calendar year) (*id.*); (6) the least restrictive environment requirement does not apply in circumstances in which the relief sought is prospective payment of tuition (*id.* at 3-5); and (7) equitable considerations–specifically, the CSE's recommendation of the BOCES ASPIE program "without any discussion"–weigh in favor of reinstating the award of relief originally granted by the IHO (*id.* at 5-6).

### c.       Defendant's Reply Memorandum of Law

Generally, in reply to Plaintiff's opposition, Defendant reiterates arguments advanced in its Memorandum of Law-in-Chief: (1) because Plaintiff did not raise her claim for compensatory education during the administrative proceedings or in her Amended Complaint, she cannot now seek that relief (Dkt. No. 22 at 3-4 [Def.'s Reply Memo. of Law]); (2) a "parental claim for compensatory education" requires a showing of a "gross violation" of the IDEA (*id.* at 4-5); and

(3) Plaintiff has not exhausted her administrative remedies with regard to whether the District committed a "gross violation" of the IDEA, and the Court therefore lacks "subject matter jurisdiction to address such a claim now" (*id.* at 5).

## 2. Parties' Arguments on Plaintiff's Motion

### a. Plaintiff's Memorandum of Law-in-Chief

Generally, in her motion for summary judgment, Plaintiff appears to assert the following nine arguments: (1) Plaintiff is not barred from reimbursement merely because Chapel Haven "does not meet the IDEA definition of a" FAPE (Dkt. No. 14, Attach. 3 at 2-3 [Plf.'s Memo. of Law]); (2) deference should not be given to the SRO's decision because it is "neither thorough nor well-reasoned" (*id.* at 5); (3) the SRO erred in concluding that Plaintiff was afforded meaningful participation in the special education decision-making process because (a) no evaluative data was discussed, and no goals were developed, at the meeting, (b) the IEP "was not discussed at all," (c) no information was provided "about why the Ulster BOCES program was appropriate," (d) the CSE "predetermined" that it would recommend the BOCES placement based solely upon the fact that Chapel Haven "was not on the state-approved list of out-of-state schools," and this predetermination constituted a procedural violation of the IDEA and denied R.M. a FAPE, and (e) the SRO impermissibly relied upon testimony at the due process hearing that "expanded upon" the information at the CSE meeting and in the IEP (*id.* at 9-13); (4) the BOCES ASPIE program was not reasonably calculated to provide R.M. an educational benefit because the District took no steps at the CSE meeting to determine whether R.M.'s "school phobias" had diminished since she was last enrolled in public school (*id.* at 14); (5) the SRO improperly shifted the burden of establishing R.M.'s phobias to Plaintiff (*id.* at 14-15); (6) the

SRO "exceeded his authority" by disregarding "credibility determinations" made by the IHO without "objective evidentiary support" (*id.* at 15-16); (7) R.M. was denied a FAPE because the IEP did not provide any transitional support services with regard to R.M.'s return to public school, no such services were discussed at the June 2013 CSE meeting, and Lewis-Jackson's testimony at the due process hearing that transitional support services are provided at the BOCES program "cannot be employed to modify the IEP to provide such services" (*id.* at 16); (8) the IHO correctly concluded that Chapel Haven was an appropriate placement for R.M. (*id.* at 17-20); and (9) the IHO correctly concluded that the equities favored an award of one year of attendance at Chapel Haven at District expense because R.M.'s parents were cooperative in the CSE's development of an IEP (*id.* at 21).

### b. Defendant's Opposition Memorandum of Law

Generally, in opposition to Plaintiff's motion, Defendant asserts the following eight arguments: (1) Plaintiff's allegations that the CSE predetermined R.M.'s placement and that the IEP lacked information concerning the ASPIE program were not raised in her demand for a due process hearing, or in the Amended Complaint, and the Court thus lacks subject-matter jurisdiction to address those claims (Dkt. No. 16, Attach. 1 at 6-7 [Def.'s Opp'n Memo. of Law]); (2) the CSE did not predetermine its recommended placement, but based its recommendation of the ASPIE program upon proper factors, including R.M.'s "strides" in social development and attendance of community college classes, as well as the CSE's learning that Chapel Haven provided "little or no" assistance for meeting class credit requirements and passing Regents examinations (*id.* at 8-9); (3) the IEP provided for an extended school year to assist in R.M.'s transition (*id.* at 9); (4) Plaintiff "refused to participate" in formulating R.M.'s IEP and did not

request an opportunity to visit the ASPIE program (*id.* at 10); (5) the SRO did not rely upon retrospective testimony to amend or reform the IEP and, in any event, there was sufficient record evidence establishing that the ASPIE program was an appropriate placement for the 2013-2014 school year (*id.* at 14-15); (6) the SRO correctly determined that, even if a procedural violation occurred, it did not impede R.M.'s right to a FAPE, significantly impede Plaintiff's opportunity to participate in the decision-making process, or cause a deprivation of educational benefits (*id.* at 16); (7) the SRO did not improperly "reverse" or disregard any credibility determination made by the IHO (who, in any event, did not indicate that his decision was based upon any credibility determinations) (*id.* at 16-18); and (8) although the IDEA does not require a transition plan for a student moving from one school to another, R.M.'s IEP contained a transition plan (*id.* at 18-20.)

### c.     Plaintiff's Reply Memorandum of Law

Generally, in reply to Defendant's opposition, Plaintiff asserts the following three arguments: (1) this Court should not adopt the Second Circuit's "'gross violation' doctrine" (i.e., require a showing of a gross violation for entitlement to compensatory education) (Dkt. No. 25 at 1-2 [Plf.'s Reply Memo. of Law]); (2) if the Court dismisses this action for lack of subject matter jurisdiction, Plaintiff will be "effectively strip[ped]" of her right to federal judicial review because she will have to commence administrative proceedings to exhaust her remedies and the District will argue that she is collaterally estopped from asserting that R.M. was denied a FAPE; and (3) despite R.M.'s graduation, a year of placement at Chapel Haven "continues to be appropriate relief" because it can assist her in transitioning to college "or other aspects of adult life[.]"  (*Id.* at 2-3.)

## II.    GOVERNING LEGAL STANDARDS

### A.    Motions for Summary Judgment in IDEA Actions

Summary judgment serves as a "pragmatic procedural mechanism for reviewing a state's compliance with the procedures set forth in IDEA and determining whether the challenged IEP is reasonably calculated to enable the child to receive educational benefits." *Lillbask v. Conn. Dep't of Educ.*, 397 F.3d 77, 83, n.3 (2d Cir. 2005) (internal quotation marks omitted).

As a result, actions brought in federal court pursuant to the IDEA "generally are resolved by examination of the administrative record in a summary judgment procedural posture." *J.R. v. Bd. of Educ.*, 345 F. Supp. 2d 386, 394 (S.D.N.Y. 2004). However, motions for summary judgment filed in IDEA actions employ a different legal standard than do traditional summary judgment motions, because, in the former, "the existence of a disputed issue of material fact will not defeat the motion." *J.R.*, 345 F. Supp. 2d at 394; *accord, T.M. ex rel. T.D.M. v. Kingston City Sch. Dist.*, 11-CV-0605, 2012 WL 4076146, at *3 (N.D.N.Y. Sept. 18, 2012) (Hurd, J.). Instead, district courts reviewing administrative decisions under the IDEA must determine whether the decision is supported by "the preponderance of the evidence," taking into account the administrative record and any further evidence presented by the parties. 20 U.S.C. § 1415(i)(2)(C); *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 380 (2d Cir. 2003).[6] However, the Supreme Court has cautioned that this preponderance-of-the-evidence standard "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206

---

[6]    Indeed, the IDEA summary judgment procedure has been characterized as an appeal from an administrative determination. *Lillbask*, 397 F.3d at 83, n.3; *accord, T.K. v. New York City Dep't of Educ.*, 779 F. Supp. 2d 289, 306 (E.D.N.Y. 2011).

(1982); *accord, Bougades v. Pine Plains Cent. Sch. Dist.*, 376 F. App'x 95, 98 (2d Cir. 2010); *T.Y. v. New York City Dep't of Educ.*, 584 F.3d 412, 417 (2d Cir. 2009).

Accordingly, an SRO's decision that "is reasoned and supported by the record" should not be disturbed. *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 114 (2d Cir. 2007).[7] Rather, a district court must give "due weight" and grant substantial deference to the findings of a SRO on issues of educational policy, especially where the court's analysis is based solely on the same evidence in the administrative record as is the analysis of the SRO. *Bougades*, 376 F. App'x at 97-98; *accord, Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 191-92 (2d Cir. 2005); *Grim*, 346 F.3d at 381; *M.S. ex rel. S.S. v. Bd. of Educ.*, 231 F.3d 96, 105 (2d Cir. 2000), *abrogated on other grounds by Schaffer v. Weast*, 546 U.S. 49 (2005).[8]

However, factual findings that are unsupported or controverted by the record may be rejected. *Weaver v. Millbrook Cent. Sch. Dist.*, 812 F. Supp. 2d 514, 521 (S.D.N.Y. 2011) (internal quotation marks omitted). Finally, the "due weight" that must ordinarily be given to the findings of an administrative body is not implicated where the body's decision concerns an issue of law instead of an issue of educational policy. *Mrs. B. v. Milford Bd. of Educ.*, 103 F.3d 1114, 1122 (2d Cir. 1997).

---

[7] To the extent that the SRO's determination conflicts with an earlier decision by an IHO, as it does here, "the earlier decision [by the IHO] may be afforded diminished weight." *Gagliardo*, 489 F.3d at 114, n.2; *see, e.g., Watson v. Kingston City Sch. Dist.*, 325 F. Supp. 2d 141, 145 (N.D.N.Y. 2004) (Hurd, J.), *aff'd*, 142 F. App'x 9 (2d Cir. 2005). However, courts may defer to the IHO's decision if the conclusions therein are based on demeanor or credibility evidence. *M.H. v. New York City Dept. of Educ.*, 685 F.3d 217, 246 (2d Cir. 2012), *aff'g*, 712 F. Supp. 2d 125, 155 (S.D.N.Y. 2010); *J.R. v. Bd. of Educ.*, 345 F.Supp.2d 386, 399 (S.D.N.Y. 2004).

[8] The rationale for this due weight and substantial deference is that the judiciary generally "lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy.'" *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir.1998) (quoting *Rowley*, 458 U.S. at 206).

**B.    Claims for Tuition Reimbursement and Compensatory Education Under the IDEA**

Under the IDEA, states receiving federal funds are required to provide "all children with disabilities" a FAPE. 20 U.S.C. § 1412(a)(1)(A); *Rowley*, 458 U.S. at 207. To meet these requirements, a school district must provide, *inter alia*, "special education and related services tailored to meet the unique needs of a particular child, and be 'reasonably calculated to enable the child to receive educational benefits.'" *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 122 (2d Cir.1998) (quoting *Rowley*, 458 U.S. at 207); *see also* 20 U.S.C. § 1401(9)(A)-(D). These services must be provided pursuant to an IEP, which the school district must review annually. 20 U.S.C. § 1401(9)(D); 20 U.S.C. § 1414(d).

To meet these requirements, New York has assigned responsibility for developing IEPs to CSEs. *Walczak*, 142 F.3d at 123 (citing N.Y. Educ. Law § 4402[1][b][1]). New York parents who disagree with their child's IEP may challenge it in an "impartial due process hearing." 20 U.S.C. § 1415(f). The hearing is held before an IHO appointed by the local board of education. N.Y. Educ. Law § 4404(1). The decision of the IHO may be appealed to a SRO. N.Y. Educ. Law § 4404(2). Following exhaustion of remedies available under state law, any party still aggrieved may challenge the decision of the SRO in either state or federal court. 20 U.S.C. § 1415(i)(2)(A).

Within this procedural framework, if a parent believes that a district has not developed an appropriate IEP which provides a FAPE, the parent may enroll the child in a private school and seek retroactive reimbursement for the cost of the private school from the district. *Burlington Sch. Comm. v. Dep't of Educ.*, 471 U.S. 359, 370 (1985); *M.S. v. Yonkers Bd. of Educ.,* 231 F.3d 96, 102 (2d Cir. 2000), *abrogated on other grounds by Schaffer*, 546 U.S. at 57-58.

To establish entitlement to tuition reimbursement under the IDEA once they file suit in federal court, the parents of a disabled child (if they are the parties who commenced the impartial hearing in the case) must establish three factors: (1) that the District's IEP was inappropriate to meet their child's special needs; (2) that the parents' placement was appropriate; and (3) that equitable considerations favor awarding the parents tuition reimbursement. *Burlington*, 471 U.S. at 369-70; *Florence Cnty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 16 (1993); *Schaffer*, 546 U.S. at 56-58; *R.E. v. New York City Dep't of Educ.*, 694 F.3d 167, 184-85 (2d Cir. 2012); *T.Y v. N.Y. City Dep't of Educ.*, 584 F.3d 412, 417 (2d Cir. 2009); *Gagliardo*, 489 F.3d at 111-12; *Carmen Cent. Sch. Dist. v. V.P.*, 373 F. Supp. 2d 402, 417 (S.D.N.Y. 2005), *aff'd*, 192 F. App'x 62 (2d Cir. 2006).

Where the parent has not unilaterally enrolled a child in a private school, and thus does not seek retroactive reimbursement, the child may be entitled to compensatory education. "'Compensatory education' is prospective equitable relief, requiring a school district to fund education beyond the expiration of a child's eligibility as a remedy for any earlier deprivations in the child's education." *Somoza v. New York City Dept of Educ.*, 538 F.3d 106, 109 n.2 (2d Cir. 2008) (citing *Burr v. Sobol*, 888 F.2d 258 [2d Cir. 1989], *aff'g prior holding in Burr v. Ambach*, 863 F.2d 1071 [2d Cir. 1988]). "An award of compensatory education is appropriate only for gross violations of the IDEA." *Id.* (citing *Garro v. Sate of Conn.*, 23 F.3d 734, 737 [2d Cir. 1994]); *accord, French v. New York State Dept. of Educ.*, 476 F. App'x 468, 471 (2d Cir. 2011) ("A disabled student who has attained the age of 21 is generally no longer eligible to receive state educational services under the IDEA. However, a form of 'prospective equitable relief,' known as compensatory education[,] remains available to such an individual if a 'gross

procedural violation' has resulted in the student's complete deprivation of a FAPE during her period of eligibility."); *Mrs C. v. Wheaton*, 916 F.2d 69, 75 (2d Cir. 1990). While "[t]he Second Circuit caselaw on what constitutes a gross violation is sparse," *Student X v. New York City Dep't of Educ.*, 07-CV-2316, 2008 WL 4890440, at *25 (E.D.N.Y. Oct. 30, 2008), "'[i]t does not follow that every procedural error in the development of an IEP renders that IEP legally inadequate under the IDEA.'" *A.C. ex rel. M.C. v. Bd. of Educ. of the Chappaqua Cent. Sch. Dist.*, 553 F.3d 165, 172 (2d Cir. 2009) (quoting *Grim*, 346 F.3d at 381). "[T]he denial of a FAPE cannot be found for procedural violations alone unless those violations '[1] impeded the child's right to a free appropriate public education; [2] significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a [FAPE] to the parents' child; or [3] caused a deprivation of educational benefits.'" *B.M. v. New York City Dep't of Educ.*, 12-CV-3247, 2013 WL 1972144, at *7 (S.D.N.Y. May 14, 2013) (quoting 20 U.S.C. § 1415[f][3][E][ii]); *accord, Wheaton*, 916 F.2d at 75; *V.M. v. North Colonie Cent. Sch. Dist.*, 954 F. Supp. 2d 102, 126 (N.D.N.Y. 2013) (D'Agostino, J.).

## II.     ANALYSIS

### A.     Whether All of the Claims in Plaintiff's Amended Complaint Must Be Dismissed for Lack fo Subject-Matter Jurisdiction Because of Mootness

As indicated in Part I.D.1.a of this Decision and Order, Defendant argues, as a threshold matter, that R.M.'s graduation and receipt of a Regents diploma has rendered her claims moot and that the Court therefore lacks subject-matter jurisdiction over this action. (Dkt. No. 13, Attach. 4 at 12-13.)

After carefully considering this matter, and for the reasons stated in Defendant's memorandum of law, the Court agrees with Defendant that R.M.'s graduation and receipt of a

Regent's diploma renders her asserted claims moot. (Dkt. No. 13. Attach. 4 at 12-13.)[9] To those reasons, the Court adds the following three points.

First, Plaintiff does not dispute that R.M. has received a Regents diploma. To the contrary, Plaintiff argues that this fact does not preclude her from obtaining relief. Moreover, Plaintiff does not appear to dispute Defendant's argument that her claims, as advanced in the administrative proceedings and in the Amended Compliant, are moot in light of R.M.'s graduation.[10] Indeed, in her opposing memorandum of law, Plaintiff responds to Defendant's argument that R.M.'s graduation renders the action moot by noting that "[c]ase law . . . establishes that a court may award *compensatory services* to a child to be employed following graduation." (Dkt. No. 18 at 1 [emphasis added].) However, "[w]hile the issue of whether Defendant fulfilled its obligations under the IDEA is pertinent to an award of compensatory education, whether to award compensatory education as a result of the failure to comply with the IDEA is a distinct issue." *M.C. v. Lake George Cent. Sch. Dist.*, 10-CV-1068, 2012 WL 3886159, at *6 (N.D.N.Y. Sept. 6, 2012) (Kahn, J.); *accord, M.R.*, 2011 WL 6307563, at *9, *11.

---

[9]     In reaching this conclusion, the Court relies upon the authorities cited by Defendant. *See, e.g., Russman v. Bd. of Educ. of Enlarged City Sch. Dist. of City of Watervliet*, 260 F.3d 114, 118-19 (2d Cir. 2001) (explaining that, because the student had "received her IEP diploma from Watervliet High School" after the 1999-2000 school year, her claim related to the provision of special education services in previous years was rendered moot); *V.M.*, 954 F. Supp. 2d at 121 ("Since the school year [for which plaintiff sought a new IEP] has concluded and [that] IEP is no longer applicable, no meaningful relief can be afforded."); *M.R. v. South Orangetown Cent. Sch. Dist.*, 10-CV-1800, 2011 WL 6307563, at *9, *11 (S.D.N.Y. Dec. 16, 2011) (explaining that plaintiffs did not request compensatory education in their due process complaint, limiting their relief sought to "a declaratory judgment as to the 2007-08 IEP, an annulment of the 2008-09 IEP, and a new IEP for that year" and, because those years had passed, "any declaration would be of only academic interest").

[10]     Under New York law, "[e]arning a Regents or local high school diploma shall be deemed to be equivalent to receipt of a high school diploma pursuant to [New York Education Law §] 3202(1), and shall terminate a student's entitlement to a free public education." N.Y. Comp. Codes R. & Regs. tit. 8, § 100.5(b)(7)(iii).

Second, although the exception to the mootness doctrine was not addressed by Plaintiff, the Court concludes that the exception does not apply here. "The Supreme Court has 'recognized an exception to the general rule [regarding mootness dismissals] in cases that are capable of repetition, yet evading review.'" *Lillbask*, 397 F.3d at 84-85 (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 [1982] [per curiam]); *accord, Russman v. Bd. of Educ. of Enlarged City Sch. Dist. of City of Watervliet*, 260 F.3d 114, 119 (2d Cir. 2001) ("Mootness is a recurring phenomenon in students' suits to vindicate constitutional rights associated with the conditions of their education: a student's graduation ends his individual interest in the conditions of education at his former school."). This exception applies in "'exceptional situations'" when two circumstances are present: "'(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again[.]'" *Lillbask*, 397 F.3d at 85 (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 [1998]). Plaintiff's claims do not present a live controversy because, in light of her graduation, there is no reasonable expectation that R.M. will be subjected to another IEP placing her in the BOCES ASPIE program (or, for that matter, any other allegedly inappropriate placement). *See id.* at 85-86 ("Even if we were to resolve the first mootness factor in favor of Lillbask's suit on Lindsey's behalf, the case would not present a live controversy absent a 'reasonable expectation' that, in the future, Lindsey will again be subjected to an IEP that proposes to place him out of the mainstream environment of the Redding public schools."); *B.J.S. ex rel.N.S. v. State Educ. Dept./Univ. of the State of New York*, 07-CV-0456A, 2013 WL 1879297, at *3 (W.D.N.Y. Apr. 15, 2013), *adopted* 2013 WL 1879646, at *1 (W.D.N.Y. May 3, 2013) (finding that "N.S.'s graduation from high school in the spring of 2012 rendered

impossible any 'reasonable expectation' of repetition" of her 2005-2006 IEP, which was never implemented); *see also Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49, 71 (2d Cir. 2001) ("[I]n the absence of a class action, the 'capable of repetition, yet evading review' exception is not available when the issue is students' rights and the complaining students have graduated from the defendant institution.").

Third, Plaintiff's reliance upon *Straube v. Florida Union Free Sch. Dist.*, 801 F.Supp 1164 (S.D.N.Y. 1992), is misplaced. In that case, the court ordered the defendant district to provide the student "with one year of remedial educational services after his graduation from high school" as compensatory education for past denial of a FAPE. *Straube*, 801 F. Supp. at 1181. Unlike Plaintiff in the present case, however, the plaintiff in *Straube* expressly sought, among other things, "conditional approval" of a particular placement for the student's IEP and compensatory damages. *Id.* at 1171-72. Moreover, the court identified "a very real possibility that the school district w[ould] continue to give [the student] another inappropriate placement"–a possibility not present here. *Id.* at 1171.

**B.    Whether Any Late-Blossoming Claim for Compensatory Education Must Be Dismissed for Lack of Subject-Matter Jurisdiction Because of a Failure to Exhaust Administrative Remedies, or, in the Alternative, Dismissed for Failure to Plead or Present Evidence of a "Gross Violation" of the IDEA**

As indicated in Part I.D.1.a of this Decision and Order, in its motion for summary judgment, Defendant argues that Plaintiff's claim for compensatory education is not properly before the Court, and cannot otherwise save Plaintiff's claims from dismissal for lack of subject-matter jurisdiction, for two alternative reasons: (1) Plaintiff did not exhaust her administrative remedies with regard to this claim because she did not request compensatory education in her demand for a due process hearing, in proceedings before the IHO or SRO, or in her Amended

Complaint; and (2) in any event, Plaintiff did not plead or present evidence of a "gross violation" of the IDEA. (Dkt. No. 13, Attach. 4 at 12-14.)

After carefully considering this matter, and for the reasons stated in Defendant's memorandum of law and reply memorandum of law, the Court agrees with Defendant. (Dkt. No. 13. Attach. 4 at 13-14; Dkt. No. 22 at 3-4.)[11] To those reasons, the Court adds the following point.

In opposing dismissal of the Amended Complaint for lack of subject-matter jurisdiction, Plaintiff advances two arguments: (1) that she was not required to seek compensatory education or allege a gross violation of the IDEA in the administrative proceedings because, at that time, she was not yet twenty-one years old and was seeking relief in relation to that school year (i.e., annulment of the 2013-2014 IEP and placement at Chapel Haven) (Dkt. No. 18 at 3 [Plf.'s Opp'n Memo. of Law]); and (2) that the Court should not require Plaintiff to establish a gross violation of the IDEA in order to obtain compensatory relief because other Circuits do not impose such a requirement (Dkt. No. 25 at 2 [Plf.'s Reply Memo. of Law] [citing *M.C. ex rel. J.C. v. Cent. Regional Sch. Dist.*, 81 F.3d 389 (3rd Cir. 1996)]).

---

[11] In reaching this conclusion, the Court relies upon the authorities cited by Defendant. *See, e.g.*, 20 U.S.C. 1415(f)(3)(B) ("The party requesting [a] due process hearing shall not be allowed to raise issues at the due process hearing that were not raised in the notice filed under subsection (b)(7), unless the other party agrees otherwise."); *Garro*, 23 F.3 at 737 (explaining that, before seeking judicial review in federal court, a party claiming to be aggrieved by a violation of the IDEA must exhaust his administrative remedies); *M.R.*, 2011 WL 6307563, at *12 ("One of the matters that must be administratively exhausted in order to be reviewed in a federal court is the issue of remedies, including whether a child should receive compensatory education."); *M.C.*, 2012 WL 3886159, at *6 (concluding that "th[e] issue [of entitlement to compensatory education] was not properly exhausted at the administrative level"); *Moseley v. Bd. of Educ. of Albuquerque Public Sch.*, 483 F.3d 689, 694 (10th Cir. 2007) ("Mr. Moseley argues that the IDEA itself says nothing about a student's claims terminating upon graduation. This may be true, but if Mr. Moseley's claims present no live controversy, they are not justiciable under the Constitution. While Mr. Moseley insists that his claims present a live controversy because the IDEA allows for reimbursement and compensatory education services, Mr. Moseley never requested such relief, nor can he articulate any equitable relief that would present a live controversy. We are obliged, under our independent duty to examine our own jurisdiction, to dismiss his appeal as moot.").

With regard to Plaintiff's first argument, the Court again notes, and Plaintiff appears to concede, that she did not seek compensatory education in the administrative proceedings or in her Amended Complaint. Plaintiff cannot avoid dismissal of her Amended Complaint on mootness grounds by advancing a late-blossoming claim for compensatory education. *See Lillbask*, 397 F.3d at 89-90 (noting that plaintiff's "Fourth Amended Complaint [w]as . . . bereft of any prayer for compensatory relief" in relation to a claim that a FAPE was denied during a particular school year, and that plaintiff's assertion of such a claim at oral argument "comes too late to preserve her challenge to that IEP placement as a live controversy"). Plaintiff's due process hearing took place between September 2013 and November 2013, and thus concerned an IEP for a school year (2013-2014) that was already in progress. During that time, R.M. was not receiving services and Plaintiff declined the IHO's consent order that the District provide services while the administrative proceedings were pending. In addition, Plaintiff did not enroll R.M. in either the BOCES ASPIE program or Chapel Haven at the time that the SRO issued his decision (February 2014) or when Plaintiff's Amended Complaint was filed (May 2014). Therefore, although her claims related to the 2013-2014 IEP were not moot at those points in time, Plaintiff, who was at all pertinent times represented by counsel, could have asserted a claim for compensatory education related to the time that R.M. had missed that year. "It was incumbent upon Plaintiff[] to administratively exhaust any claim for relief [she] believed could provide [R.M.] with the education that [she] thought [R.M.] needed." *M.R.*, 2011 WL 6307563, at *13; *see also Essen v. Bd. of Educ. of Ithaca City Sch Dist.*, 1996 WL 191948, at *6 (N.D.N.Y. Apr. 15, 1996) ("Plaintiffs should have been aware that such a claim was viable at the time that they initiated their administrative appeal. Their failure to raise this claim during that appeal precludes this Court from now addressing that issue.").

With regard to Plaintiff's second argument, the Court notes that established Second Circuit case law requires a plaintiff over the age of twenty-one to demonstrate by a preponderance of evidence "that she has suffered a gross procedural violation" resulting in the denial of a FAPE during her period of eligibility. *French*, 476 F. App'x at 471.[12] In any event, Plaintiff has not done so in this case, nor has she even alleged facts plausibly suggesting a claim for compensatory education.

The Court notes that it need not reach Defendant's counterclaims, which were asserted in the event that the Court reversed the SRO's determination that the District did not deny R.M. a FAPE. (Dkt. No. 6 at 2-6). Moreover, in light of this disposition, Plaintiff is not entitled to an award of costs, expenses, or attorneys' fees because she was not a "prevailing party" in the administrative proceedings (which culminated when the SRO sustained the District's appeal) or in the present action. *A.R. ex rel. R.V. v. New York City Dep't of Educ.*, 407 F.3d 65, 75 (2d Cir 2005); *see John M. v. Brentwood Union Free Sch. Dist.*, 11-CV-3634, 2015 WL 5695648, at *11 (E.D.N.Y. Sept. 28, 2015) (concluding that "Plaintiffs cannot be considered 'prevailing parties' for the IHO orders, since the SRO ultimately annulled both awards").

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion for summary judgment (Dkt. No.13) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Plaintiff's motion for summary judgment (Dkt. No. 14) is **<u>DENIED</u>**; and it is further

---

[12]    Notably, in *French*, the Second Circuit observed that the plaintiff "properly exhausted her state administrative remedies" by, among other things, filing "a second complaint and petition for due process review requesting compensatory education." *French,* 476 F. App'x at 470.

**ORDERED** that the Amended Complaint (Dkt. No. 4) is **<u>DISMISSED</u>**; and it is further

**ORDERED** that Defendant's counterclaims (Dkt. No. 6) are **<u>DISMISSED</u>**; and it is further

**ORDERED** that the Clerk of the Court is directed to issue a Judgment for Defendant and close this case.

Dated: November 23, 2015
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge